# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 13-808V**
**(Not to be Published)**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *
JESSICA DEAN *and* RYAN DEAN, *on behalf of their minor child*, I.D.,

Petitioners,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.
* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Special Master Corcoran

Filed: November 12, 2015

Attorney's Fees and Costs; Reasonable Basis; Interim Fees; Expert Costs.

*Andrew D. Downing*, Van Cott & Talamante, PLC, Phoenix, AZ, for Petitioners.

*Darryl R. Wishard*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION AWARDING IN PART INTERIM ATTORNEY'S FEES AND COSTS[1]

On October 17, 2013, Jessica and Ryan Dean filed a petition on behalf of their minor child, I.D., seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Having filed numerous medical records, along with three reports from two experts, Petitioners have now requested an interim award of attorney's fees and costs. Respondent objects that an interim fees award is not warranted at this juncture because the Deans have not made the requisite special showing. In the alternative, should I determine that an interim fees award is appropriate, Respondent argues that (i) the hourly rate requested for Petitioners' counsel,

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, §205, 116 Stat. 2899, 2913 (Dec. 17, 2002) (current version at 44 U.S.C. §3501 (2014)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

Andrew Downing, is not reasonable; (ii) the hours billed by Petitioners' counsel were excessive and unreasonable; and (iii) the hourly rate requested for the retained experts in this case are unreasonable. As discussed below, I hereby **GRANT IN PART** Petitioners' interim fees application, awarding interim attorney's fees and related costs of **$38,104.83**, while deferring action on any expert-related costs.

## Factual History

On September 24, 2010, I.D. was born at full term via vaginal delivery, with APGAR scores of 8/9. Pet'rs' Ex. 2 at 81; Pet'rs' Ex. 3 at 6. On December 21, 2010, I.D. received her first dose of diphtheria and tetanus toxoids and acellular pertussis vaccine ("DTaP")[3] and haemophilus influenza type b vaccine ("Hib")[4] with no reported adverse reaction. Pet'rs' Ex. 2 at 8, 10. On February 24, 2011, I.D. received her second dose of DTaP and Hib. *Id.* at 24. On March 17, 2011, I.D. presented with a rash, and was diagnosed with eczema. *Id.* at 23.

On May 13, 2011, I.D. saw Dr. Davis, a pediatric neurologist, due to "unusual movements." Pet'rs' Ex. 2 at 66. Her mother reported that when I.D. experienced a mood change, she would lift her hands to and from her face and twist her hands in a flailing-like maneuver. *Id*. Her neurological exam and subsequent electroencephalogram were normal, and Dr. Davis diagnosed her with benign stereotypies of childhood (similar to a childhood tic disorder). *Id*. at 67.

At I.D.'s nine-month and one-year well-child visits, I.D.'s abnormal movements had continued, but I.D. had normal growth and development. Pet'rs' Ex. 2 at 18. Again, I.D. was diagnosed with benign stereotypies of childhood. *Id*. On December 28, 2011, I.D.'s pediatrician recorded that I.D. was sensitive to sounds and textures and was a picky eater. *Id*. at 14. She saw a speech and occupational therapist throughout 2012 and 2013 for sensory integration and speech delay issues. *Id*. at 64; Pet'rs' Ex. 4 at 74.

On January 21, 2013, Mrs. Dean reported that I.D. had experienced a reaction to her February 24, 2011, vaccinations that lasted about a year before resolving. Pet'rs' Ex. 2 at 72. On May 17, 2013, I.D.'s pediatrician wrote a permanent medical exemption from future immunizations due to adverse reaction. *Id*. at 10. However, prior to this time, there is no documented discussion in the medical records of adverse reactions to I.D.'s February 24, 2011, vaccinations.

---

[3] The DTaP vaccine is a "combination of diphtheria toxoid, tetanus toxoid, and acellular pertussis vaccine; absorbed on an aluminum-adsorbing agent." *Dorland's Illustrated Medical Dictionary* 2015 (32d ed. 2012).

[4] The Hib vaccine protects against Haemophilus influenza type b, a disease caused by bacteria. Hib disease was the leading cause of bacterial meningitis, an infection of the lining of the brain and spinal cord. U.S. Department of Health and Human Services, *Hib Vaccine: What You Need to Know*, Vaccine Information Statement (2015), http://www.cdc.gov/vaccines/hcp/vis/vis-statements/hib html.

I.D.'s pediatrician ultimately concluded that I.D. suffered an encephalopathy due to her February 24, 2011, vaccinations and diagnosed her with a neuro-encephalopathic reaction. Pet'rs' Ex. 10. Petitioners now bring this action on behalf of I.D. alleging that I.D. developed significant neurological deficits following receipt of the Hib and DTaP vaccines at her 5-month wellness exam, which took place on February 24, 2011. Pet. at 1.

**Procedural History**

Petitioners filed this action on October 17, 2013, alleging both a Table and a non-Table injury. The alleged Table injury claim is that I.D. suffered an encephalopathy as defined by the Vaccine Injury Table. By contrast, the alleged non-Table injury claim is that the vaccinations resulted in a central nervous system injury.

Petitioners thereafter began the process of gathering and filing relevant medical records. On December 12, 2013, Petitioners filed their Statement of Completion. ECF No. 10. Following this filing, Respondent's Rule 4(c) report deadline was initially set as February 10, 2014. ECF No. 13. However, Petitioners expressed interest in exploring settlement and, as such, the deadline was suspended. The parties were instructed to file a joint status report on or before March 12, 2014, regarding the status of settlement negotiations. ECF No. 14. Those discussions extended into early April, at which time Respondent filed a status report indicating that the parties were unable to settle this case. ECF No. 18. A status conference was held on April 10, 2014, and I set a deadline of June 13, 2014, for the filing of Petitioners' expert report, with a status report by Respondent to follow within thirty days. ECF No. 19.

Between June and October of 2014, the Deans filed a total of three motions to extend their deadline to file an expert report. *See generally* ECF Nos. 22, 26, and 28. Each was granted, and then on October 20, 2014, Petitioners filed an expert report and supporting literature from Dr. David Axelrod. ECF No. 30. Respondent filed her Rule 4(c) report on February 6, 2015. ECF No. 36. In it, she disputes that I.D. experienced an encephalopathy post-vaccination. *Id*. at 6-7. She also argued that Petitioners failed to carry their burden to prove a non-Table injury. *Id*. at 7. Specifically, she noted that Dr. Axelrod's report's factual summary was "cursory and inaccurate," and he failed to cite to the contemporaneous medical records, instead relying on the parents' statements made much later. *Id*. at 8-9. She argues that Petitioners also fail under *Althen* prong two, because the treater's opinion attributing injury to vaccination – which is normally accorded significant weight in the Vaccine Program – inappropriately relies on the parents' statements. *Id*. at 10-11. Finally, Respondent argues that Petitioners fail to meet *Althen* prong three, because the contemporaneous medical records do not support a timeframe consistent with the theory proposed by Dr. Axelrod. *Id*. at 11.

Following a status conference, Petitioners were instructed to file a supplemental expert report from Dr. Axelrod or an additional export report from a pediatric neurologist responding to the identified issues on or before May 29, 2015. On June 1, 2015, they filed an expert report and supporting literature from Dr. Harvey Cantor. ECF No. 39.

On June 22, 2015, Petitioners filed the present interim fees award application ("Mot."). ECF No. 41. Petitioners argue that they have acted in good faith and have established a reasonable basis for their claim, and thus fees are generally appropriate. Mot. at 9-10. They also assert that their case meets all three criteria set forth by the Federal Circuit in *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008) for an interim fees award, because (i) the case is protracted; (ii) the case involves costly expert testimony; and (iii) the case involves undue hardship. Mot. at 10-16. Petitioners further maintain that Mr. Downing's hourly rate is reasonable, as are Petitioners' experts' fees. *Id.* at 17-33.

The Deans request compensation for Mr. Downing at a rate of $350/hour for the 82.9 hours he has expended in this case thus far, for a total of $29,015.00. *Id.* at 18-20. In addition, they ask that an associate attorney, Jordon Redman, be awarded fees in the amount of $195/hour for the 38.8 hours expended in this case thus far, for a total of $7,566.00, and also seek to recover costs for work performed by two legal assistants (Robert Cain and Danielle Avery) billing $100/hour, for a joint total of $588.50. *Id.* at 18, 24. Petitioners also ask for reimbursement of funds paid to Drs. Axelrod and Cantor for their initial work on the case, including the preparation of filed expert reports, in the total sum of $11,800.00, based on hourly rates of $500 for both. *Id*. at 30.

Respondent filed an opposition to the interim award application on July 1, 2015 ("Opp."). ECF No. 42. She maintains that the express language of section 15(e)(1) of the Vaccine Act does not confer authority on special masters to award interim fees. Opp. at 3-4. She then argues that even if interim fees awards are permitted, such award is inappropriate in the present case because Petitioners have not met the "necessary" *Avera* criteria. *Id.* at 7-8. Respondent does not, however, presently contest Petitioners' good faith in filing the claim, or the claim's reasonable basis, but reserves the right to challenge reasonable basis at a later time. *Id.* at 7, n.3.

Respondent further argues that, to the extent I grant an interim award, the $350 hourly rate requested for Mr. Downing is unreasonably high. *Id.* at 12. Respondent suggests a 2013 local rate of $290.00/hour; then, factoring in Consumer Price Index inflation, a 2014 local rate of $295.00/hour and a 2015 local rate of $296.00/hour.[5] *Id.* at 13-17. Regarding the total hours claimed by Mr. Downing, Respondent says that "his work should exhibit more efficiency." *Id.* at

[5] Respondent has not asserted any objection to the rates requested for the services of Mr. Redman or the paralegals who have provided services on this matter. Opp at 12, n. 9. As such, these issues are conceded by Respondent. Because I have independently concluded that these rates are acceptable, I will not be addressing them herein, but instead applying the relevant rates to my calculation of the interim award to be granted.

17. Finally, Respondent contends that the rates charged by Petitioners' experts are unreasonable. *Id.* at 18-19.

Petitioners replied to Respondent's Opposition on July 7, 2015. ECF No. 43 ("Reply"). In it, the Deans reiterate their earlier argument that the decisions of the Federal Circuit permit the recovery of interim fees and costs. Reply at 3-8. With respect to challenging Mr. Downing's hourly rate, Petitioners question whether Respondent's reliance on the 2014 Real Rate Report and the 2013 Economics of Law Survey supports the lower hourly rate she urges. *Id.* at 9. Petitioners also object to Respondent's blanket efficiency objections, noting that Respondent fails to point to any specific examples in the record of inefficiency. *Id.* at 15. Finally, Petitioners address Respondent's claim that Petitioners' experts' fees are not reasonable, by reiterating that these experts are entitled to the prevailing market rate for the work performed, and that the rates they are charging are in fact reasonable. *Id.* at 15-17.

On August 13, 2015, the Deans filed a Supplemental Brief providing additional evidence that Petitioners' counsel has not raised his billing rates. *See* ECF No. 44 ("Supp. Br."). On August 18, 2015, Respondent filed a response, urging the Court to disregard such evidence. ECF No. 45. Later that day, Petitioners filed a reply acknowledging that Respondent has, in fact, not conceded the validity of the rate requested in this case, and is not bound to accept those rates in this instance, but that Petitioners merely provided the information due to the similarity to a previous case where the information was requested. ECF No. 46. Thereafter, on October 2, 2015, Petitioners filed a supplemental brief providing additional information to demonstrate the nature of the burden placed on Petitioners' counsel in carrying expert expenses in the Vaccine Program. ECF No. 50 ("Supp. Br. on Undue Burden"). This matter is now ripe for resolution.

## ANALYSIS

### I. An Interim Award is Appropriate in this Case.

Controlling decisions of the Federal Circuit[6] permit the recovery of interim fees and costs in Vaccine Program cases. *Cloer v. Sec'y of Health and Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012); *Avera*, 515 F.3d at 1352. Indeed, as noted in *McKellar v. Sec'y of Health and Human Servs.*, "interim fees are permitted even before an entitlement decision is made." 101 Fed. Cl. 297, 302 (2011).

In determining that interim fees awards should be available in Vaccine Program cases, the Federal Circuit followed the Supreme Court's construction of other fee-shifting statutes. *Avera*,

[6] In this decision, I reference or rely upon both the decisions of special masters as well as the judges of the Court of Federal Claims, all of which constitute persuasive, but not binding authority. *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998). Federal Circuit decisions, however, are binding on special masters. *Guillory v. Sec'y of Health & Human Servs.*, 59 Fed. Cl. 121, 124 (2003), *aff'd*, 104 Fed. App'x 712 (Fed. Cir. 2004).

515 F.3d at 1351-52. *Avera*, however, did not define precisely the circumstances in which an interim award might appropriately be issued – leading other special masters to observe that the standards for granting an interim fees award "remain somewhat muddled." *Small v. Sec'y of Health & Human Servs.*, No. 02-1616V, 2014 WL 308297, at *1 (Fed. Cl. Spec. Mstr. Jan. 7, 2014) (citing *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1375 (Fed. Cir. 2010)). *Avera* has thus been interpreted as allowing special masters broad discretion in determining whether to award interim fees. *See, e.g.*, *Kirk v. Sec'y of Health & Human Servs.*, No. 08-241V, 2009 WL 775396, at *1 (Fed. Cl. Spec. Mstr. Mar. 13, 2009) (reading *Avera* to set a "broad, discretionary vehicle for ensuring that petitioners are not punished financially while pursuing their vaccine claim"); *Bear v. Sec'y of Health & Human Servs*., No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013) (*Avera* provides only "*examples* and *general guidance* concerning when interim fees and costs might be awarded, leaving the special masters broad **discretion** to consider many factors in considering whether an interim award is appropriate in a particular case") (emphasis in original).

The awarding of interim fees must also be based on the more general factors that special masters consider, in their discretion to award reasonable fees and costs to unsuccessful petitioners (given that an interim request, being made in a case that has yet to be adjudicated, is literally made in the context of an "unsuccessful" petition). Thus, a special master asked to make an interim award must consider if (i) the petition was brought in good faith;[7] and (ii) there was a reasonable basis[8] for the claim for which the petition was brought. Section 15(e)(1); *Silva v. Sec'y of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012); *McKellar*, 101 Fed. Cl. at 303 (applying good faith/reasonable basis test to interim fees request).

Here, Respondent contests Petitioners' interim fees application arguing that (i) interim fees are not statutorily authorized as per Section 15(e)(1) of the Vaccine Act; and (ii) to the extent special masters are in fact so authorized, then they may only act in limited circumstances, such as where a petitioner makes a particularized showing of hardship, and that such circumstances are absent in this case. Opp. at 2-3. The first of these objections is often repeated by Respondent in

[7] Determining whether a petition was filed in good faith is a subjective inquiry, and can be established as long as a petitioner demonstrates an honest belief that she suffered a compensable vaccine injury. *See Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). This element is therefore the more easily established of the two. *Austin v. Sec'y of Health & Human Servs.*, No. 10-362V, 2013 WL 659574, at *7 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("[d]ue to its subjective nature, the standard for good faith is very low"). Indeed, some cases stand for the proposition that absent an affirmative showing that a petitioner acted in bad faith, a petitioner is entitled to a presumption of good faith. *See, e.g.*, *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996).

[8] The reasonable basis requirement involves an objective inquiry with no such favorable presumption as with determining good faith. *See McKellar*, 101 Fed. Cl. at 303-34 (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375 (Fed. Cir. 1994)) ("[t]he petitioner must affirmatively establish a reasonable basis to recover attorneys' fees and costs"). An assessment of reasonable basis "look[s] not at the likelihood of success but more to the feasibility of the claim." *Di Roma*, 1993 WL 496981, at *1.

opposing interim fees and costs requests,[9] but has been repeatedly dispensed with. *See, e.g.*, *Crutchfield v. Sec'y of Health & Human Servs.*, No. 09-39V, 2011 WL 3806351, at *2 (Fed. Cl. Spec. Mstr. Aug. 4, 2011). In short, I am empowered to grant an interim fees and costs award if I deem (in the reasonable exercise of my discretion) that it is appropriate to do so.

There is more meat on the bones of Respondent's second argument – that the Deans have failed to make a "special showing of hardship" justifying an interim award. Opp. at 5-6, 8 (citing *McKellar*, 101 Fed. Cl. at 300-01). Petitioners respond by attempting to demonstrate that they have satisfied each of the *Avera* criteria. Mot. at 12 (citing *Avera*, 515 F.3d at 1352). To resolve this aspect of Respondent's objections requires some evaluation of where the case presently stands.

First, I do not find that the matter is notably protracted. In most cases the "protracted proceedings" element is only satisfied where several years have passed in a case's life, or where its trajectory is anticipated to take several more years prior to resolution. *See, e.g.*, *Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 2284989, at *4 (Fed. Cl. Spec. Mstr. Apr. 30, 2013) (granting interim fees when proceedings had been ongoing for over five years); *Jakes v. Sec'y of Health & Human Servs.*, No. 06-831V, 2013 WL 1150518, at *4 (Fed. Cl. Spec. Mstr. Feb. 19, 2013) (awarding Mr. Downing interim fees because the case had been ongoing for over six years).

Second, in an effort to demonstrate costliness of expert testimony, the Deans assert that their counsel has had to reimburse expert costs of $11,800. Mot. at 33. Although there is no clear authority for what standard applies in measuring costliness (*see, e.g.*, *Avila v. Sec'y of Health & Human Servs.*, 90 Fed. Cl. 590, 598 (Dec. 22, 2009) (citing *Avera*, 515 F.3d at 1352)); *but see Fester v. Sec'y of Health and Human Servs.*, No. 10-243V, 2013 WL 5367670, at *15 (Fed. Cl. Spec. Mstr. Aug. 27, 2013) (determining that "[i]t makes considerable practical sense" to evaluate whether expert costs are high based on objective criteria)), I do not find that the particular expert costs at issue are notably high from an objective standpoint. $11,800 is not an insignificant amount, but it is not a shocking price for the services of two experts.

Finally, Petitioners and Respondent disagree whether the undue hardship criterion solely includes hardship to the Petitioners (Respondent's position), or whether it should consider hardship to both Petitioners and Petitioners' counsel (Petitioners' position). Mot. at 14-17; Opp. at 8. I have previously decided, however, in cases very similar to the present, that counsel's burdens in litigating a case (and even in litigating multiple Vaccine Program cases) are relevant to evaluating hardship, since to do so is consistent with one of the underlying purposes of permitting interim fees in the first place. *Al-Uffi v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669,

---

[9] *See, e.g.*, *Thomas v. Sec'y of Health & Human Servs.*, No. 12-309, 2013 WL 5718948, at *1 (Fed. Cl. Spec. Mstr. Sept. 26, 2013); *Whitener v. Sec'y of Health & Human Servs.*, No. 06-477, 2011 WL 1467919, at *1 (Fed. Cl. Spec. Mstr. Mar. 25, 2011).

at *8 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). Because an interim fees award will assist the representation of the Petitioners in this matter, I deem one appropriate.

There are no other bases for denial of an interim fees award in this case. Respondent does not meaningfully contest Petitioners' good faith or reasonable basis in bringing this petition. Opp. at 7, n. 3.[10] And I am not persuaded by Respondent's argument that interim fees applications should only be granted in rare, exceptional instances. As previously discussed, *Avera* provides special masters with "broad discretion" in determining whether to make an interim award. *See, e.g.*, *Kirk*, 2009 WL 775396, at *1. In the exercise of that discretion, I find an interim fees award[11] is appropriate in this particular case.

## II. <u>Challenges to the Amounts Requested for Petitioners' Attorneys.</u>

I must now determine the magnitude of Petitioners' interim attorney's fees award. Whether a fees award is made on an interim basis or after a case's conclusion, the requested sum must be "reasonable." Section 15(e)(1). It is for the special master to evaluate and decide whether this is the case. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). To this end, special masters may in their discretion reduce attorney hours *sua sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Perreira*, 27 Fed. Cl. at 34 (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs).

Determining the appropriate amount of an award of reasonable attorney's fees is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera*, 515 F.3d at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id*. at 1348. This standard for calculating a fee award is considered applicable in most cases where a fees award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429-37 (1983).

### A. *Proper Hourly Rate*

---

[10] Respondent at best indirectly attacks reasonable basis, stating that the two filed expert reports are "weak." Opp. at 7, n. 3. But for purposes of the present application, Respondent concedes that sufficient reasonable basis is established to make an interim award appropriate. *Id*. I separately conclude herein that there is sufficient support for Petitioners' claim to find reasonable basis for the claim's filing – based on the evidence of Petitioners' vaccination, onset, and injury supported by the medical record, including I.D.'s pediatric treaters. Special Masters have historically accorded deference to treaters' opinions. *See, e.g.*, *Andreu v. Sec'y of Health & Human Servs.*, No. 98-817V, 2008 WL 2517179, at *8 (Fed. Cl. Spec. Mstr. May 29, 2008).

[11] I do not, however (for the reasons stated below), find that the present interim award should also include expert costs incurred to date.

An attorney's reasonable hourly rate is more precisely understood to be the "prevailing market rate" in the relevant forum. *Avera*, 515 F.3d at 1349; *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *2 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for rev. den'd*, 91 Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). That rate is in turn determined by the "forum rule," which bases the award rate on rates paid to similarly qualified attorneys in the forum where the relevant court sits (Washington, DC for Vaccine Program cases). *Avera*, 515 F.3d at 1348. After the hourly rate is determined, the reasonableness of the total hours expended must be considered. *Sabella*, 86 Fed. Cl. at 205-06. This reasonableness inquiry involves consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley*, 461 U.S. at 434, 437.[12]

Respondent maintains that Mr. Downing's requested rate of $350/hour is unreasonable.[13] *Id*. I recently determined in *Al-Uffi*, however, that a reasonable hourly rate for Mr. Downing is $350/hour. That analysis is broadly consistent with two other recent decisions involving different Vaccine Program counsel – *Scharfenberger v. Sec'y of Health & Human Servs.*, No. 11-221V, 2015 WL 3526559 (Fed. Cl. Spec. Mstr. May 15, 2015), and Special Master Gowen's decision in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *reconsid. den'd*, 2015 WL 6181910 (Fed. Cl Spec. Mstr. Sept. 21, 2015).

I thus find that $350/hour is a reasonable hourly rate for Mr. Downing for work performed in 2015. That rate, however, cannot be applied retroactively to work done in previous years, as doing so would effectively be the equivalent of charging the government interest. *Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 3705153, at *17-19 (Fed. Cl. Spec. Mstr. July 25, 2011). As a result, employing the Consumer Price Index Calculator, Mr. Downing's rate of $350/hour is hereby adjusted to $348/hour for work performed in 2014 and $342/hour for work performed in 2013.

B. *Reasonable Hours Worked*

I must also determine if the fees applicant has established the reasonableness of the work performed. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986) ("[i]t remains

---

[12] In some cases, determining the proper hourly rate for a particular attorney requires consideration of whether there is a significant disparity between the forum rate applicable to the Vaccine Program generally and the geographic forum in which the attorney practices, in order to adjust the rate used for the lodestar calculation. *Avera*, 515 F.3d at 1349, (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)). Here, however, the parties do not dispute that the forum rate and the rate prevailing among Arizona attorneys (the geographic locale from which Mr. Downing practices) is substantially equivalent, obviating the need for such rate comparison. *See* Opp. at 13.

[13] As noted above, Respondent does not contest the reasonability of Mr. Redman's requested rate of $195/hour. I do not separately find that particular rate is unreasonable for an attorney with his level of experience, based on the rate ranges discussed herein.

counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero.").[14] In doing so I am not obligated to evaluate an attorney's billing records on a line-by-line basis. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993) (approving the special master's elimination of 50 percent of the hours claimed); *see also Broekelschen v. Sec'y of Health & Huamn Servs.*, 102 Fed. Cl. 719 at 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours). At bottom, as the Supreme Court instructs, when awarding attorney's fees, special masters may use estimates to achieve "rough justice." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

Respondent offers a single blanket objection that the hours billed by Mr. Downing are "excessive and unreasonable." Opp. at 17-18. However, this objection is not supported by a single example from the record. *Id*. Because I have not been presented with a basis for adjusting the time billed in this matter, and because I see no basis from my review of the record to do so independently, Petitioners shall be awarded all the time proposed in their application. This results in an attorney's fees award of $28,805.00 in total ($6,532.20 for 19.1 hours in 2013; $9,952.80 for 28.6 hours in 2014; and $12,320.00 for 35.2 hours in 2015).

## III. <u>Challenges to Requested Expert Costs.</u>

The Deans also request an award of interim costs for reimbursement (in the total amount of $12,975.33, $11,800 of which was paid to experts) in this case. They have the same burden of demonstrating the reasonableness of such costs as they do with respect to attorney's fees. *Perreira*, 27 Fed. Cl. at 34; *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Fester*, 2013 WL 5367670, at *16.

Here, I am hesitant to award the expert costs for two related reasons. First, the timing of the request is slightly premature. Such awards are more commonly granted following the expert's testimony at an entitlement hearing. *See, e.g., Robert*, 2013 WL 2284989 (granting interim award of expert costs after conclusion of hearing but before issuance of entitlement decision); *Dobrydnev v. Sec'y of Health and Human Servs.*, 94 Fed. Cl. 134, 148 (2010) (error for special master to deny interim fees request to cover incurred expert costs; expert had testified at hearing and needed to be compensated for prior work before he would be willing to testify at subsequent rebuttal proceeding); *see also Crutchfield*, 2011 WL 3806351, at *8 (granting interim award of expert costs after expert's testimony at an evidentiary hearing; although petitioner had paid cost of expert's report preparation, it was an undue hardship to require petitioner also cover costs incurred after expert testified at trial). No hearing is immediately pending, and there has been no representation by the Petitioners that the experts' appearances are dependent on satisfying their costs in advance.

---

[14] Although *Mares* did not interpret the Vaccine Act's fees provisions, fee-shifting statutes are interpreted similarly. *Avera*, 515 F.3d at 1348.

Second, I do not find that the expert costs are particularly high. One of the *Avera* criteria for an award of interim costs is whether the matter requires the services of "costly experts," which is best resolved by looking at the issue objectively. *Avera*, 515 F.3d at 1352; *Fester*, 2013 WL 5367670, at *15 ("[a] petitioner or petitioner's counsel who has expended $100,000 in expert costs in a case that may be on review or appeal for several more years certainly presents a more compelling case for an interim award than one who has only a $1,000 expert retainer cost outstanding"). The amount in question (approaching $12,000) is not insignificant, and I do not deny that its satisfaction may impose some burdens on counsel, but they are foreseeable burdens in *any* active litigation that do not independently justify an interim award.

My reaction to the interim request for expert costs also is influenced by the case's nature. Because I am granting an interim fees award, it follows that (at least at present) I do find the case has some reasonable basis. Yet I note that there are evident problems with the claims herein (beyond the notable weaknesses in the Table claim). All of the expert reports offered in support of both claims seem primarily to rely on statements by Mrs. Dean about I.D.'s vaccination reaction rather than the medical records themselves. But it is well accepted in the Vaccine Program that ordinarily medical records (and what they reflect about a vacinee's health) are considered more probative than the recollections of interested witnesses. *See, e.g.*, *Reusser v. Sec'y of Health & Human Servs.*, 28 Fed. Cl. 516, 523-24 (1993) ("written documentation recorded by a disinterested person at or soon after the event at issue is generally more reliable than the recollection of a party to a lawsuit many years later"); *Robi v. Sec'y of Health & Human Servs.*, No. 12-352V, 2014 WL 1677116, at *2-3 (Fed. Cl. Spec. Mstr. Apr. 4, 2014) (citing *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993)) ("[i]n weighing divergent pieces of evidence, special masters usually find contemporaneously written medical records to be more significant than oral testimony"). Such a case will be difficult to prove, and may turn not on expert testimony at all, thus diminishing the value of their participation. It is wiser for me to defer ruling on their costs until after I hear their testimony, and can then evaluate the reasonableness of the requested fees in light of contribution made to the case by the respective experts.

Petitioners make several policy arguments as to why an interim award of expert costs is justified, but I find them unpersuasive under the circumstances. Petitioners assert that the ability of other petitioners to retain competent counsel in the Vaccine Program will be jeopardized if attorneys must bear expert costs in many Vaccine Program proceedings without an immediate expectation of reimbursement. Supp. Br. on Undue Burden at 3. They argue that because the Vaccine Program benefits from having the "highest qualified experts available" to "opine on the complicated subject matter involved in these cases," I should err on the side of awarding such costs when requested. Mot. at 30.

Those sorts of concerns, however, while rational, do not compel an expert costs award herein. Vaccine Program experts are likely aware of the favorable fee-shifting provisions of the

Vaccine Act[15] – and thus that they will be compensated, sooner or later, for reasonable time spent on a case (assuming of course the case has reasonable basis). While counsel may initially bear some of these costs in prosecuting a petitioner's claim, that fact alone (given the otherwise assurance of eventual payment) is not a basis for an interim fees award – otherwise, "interim fees would be the norm." *McKellar*, 101 Fed. Cl. at 301. To ask the special master to act otherwise requires this Court to partner with counsel in ensuring the successful functioning of their business model – something that goes well beyond simply encouraging the availability of representation to successful petitioners, while also inviting inappropriate scrutiny into an attorney's financial management of his own practice. *Fester*, 2013 WL 5367670, at *15 ("[t]o look at such cases subjectively would require delving into a law firm's or expert's financial situation, a requirement that would likely be repellant to the court and law firm alike").

Petitioners should certainly renew the present expert costs requests later, after their experts have carried out their purpose by testifying. At that time, Petitioners may supplement the request with statements or invoices recording additional expert costs.[16] I defer resolution of this aspect of Petitioners' motion until that time.

## CONCLUSION

Based on all of the above, the following chart sets forth the total calculation of Petitioners' interim fees and costs award:

| Contested Sum | Amount Requested | Reduction | Total Awarded |
|---|---|---|---|
| Mr. Downing's Fees | $29,015.00 | $210.00 | $28,805.00 |
| Associates and Legal Assistants Fees | $8,124.50 | none | $8,124.50 |
| Expert Costs | $11,800.00 | N/A | N/A |
| Other Costs | $1,175.33 | None | $1,175.33[17] |

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fees awards, and based on the foregoing, I **GRANT IN PART** Petitioners' Motion for Interim Attorney's Fees, awarding **$38,104.83** in interim fees and costs. I **DEFER** consideration

[15] Indeed, certain experts routinely testify in Vaccine Program cases. It appears Dr. Axelrod himself has participated to date in nearly a dozen Vaccine Program cases.

[16] Should this case become more protracted, or the facts change in such a way that the case for an interim award of expert costs is more compelling, Petitioners could also renew this portion of her request sooner. And I urge the parties to consider stipulating to the award of such fees and costs upon conclusion of the hearing.

[17] Respondent has not objected to these costs. *See generally* Opp. Because I find them reasonable, I hereby include them in the award without adjustment.

of expert costs until a later time. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[18]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

[18] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.